

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 30, 2026

**BY ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     **Re:**    ***United States v. Jason Ahmed, et al*, 26 Cr. 97 (ALC)**

Dear Judge Carter:

     The Government respectfully submits this letter in opposition to defendant Jason Ahmed's application for release pending trial. The defendant, along with several of his co-conspirators, was arrested and ordered detained by the Magistrate Court following his indictment for narcotics trafficking and possession (and sale) of firearms in furtherance of his drug trafficking activities. (Dkts. 1, 10.) For largely the reasons set forth in the Government's oral presentation at Ahmed's presentment and detention hearing, the defendant is unable to rebut the presumption that no condition or combination of conditions short of detention will reasonably ensure the safety of the community. (*See* Dkt. 26 at 4-55 (the "Mar. 17, 2026 Hr'g Tr.")). Accordingly, for the reasons set forth in the Government's presentation at Ahmed's detention hearing, which the Government adopts and incorporates by reference herein, the Government respectfully requests that the Court order the defendant remain detained.

**I.    Applicable Law**

     This Court reviews *de novo* the Magistrate Court's bail determination. *See United States v. Paulino*, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018). Thus, "a district judge hearing a bail appeal must exercise its independent judgment, and not defer to the magistrate." *Id.*

     Typically, the Government bears a dual burden of proving that the defendant is a flight risk by a preponderance of the evidence and that the defendant is a danger to the community by clear and convincing evidence. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). However, where "there is probable cause to believe that a defendant has committed a crime involving controlled substances that carries a maximum term of imprisonment of ten years or more, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Kirkaldy*, 181 F.3d 83, 83 (2d Cir. 1999) (internal citations and quotations omitted). "Accordingly, in such cases, though the Government still bears the burden of persuasion, it is presumed that the

Page 2

defendant will be detained unless he introduces sufficient evidence to rebut the presumption. The introduction of some evidence by the defendant does not automatically rebut the presumption; instead, the evidence must be weighed along with the factors articulated in 18 U.S.C. § 3142(g)." *United States v. Jackson*, No. 17 Cr. 557 (NSR), 2017 WL 5151665, at *1 (S.D.N.Y. Nov. 3, 2017). These factors include: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Importantly, the Second Circuit has "expressly held in several cases that a bail package that might reasonably assure the appearance of [the defendant] at trial, will not reasonably assure the safety of the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citations and quotation marks omitted) (alteration in original). In other words, even conditions that include home detention or incarceration, electronic monitoring, restricted interactions with others, and promises to comply with the requirements of pretrial release do not necessarily alleviate a defendant's danger to the community. *Id.* at 437; *see also United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991) (reversing the district court's order of pretrial release despite the defendant's lack of criminal history); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (reversing the district court's order of pretrial release because electronic monitoring and house arrest were insufficient to alleviate the defendant's danger to the community).

The Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

## II.    Discussion

The defendant is a clear danger to the community. The scope and brazen nature of the defendant's drug trafficking in his own community, compounded by the conspiracy's reliance on (and sale of) firearms, establish that no condition or combination of conditions will be able to protect the public from the defendant.

First, even assuming the defendant succeeds in rebutting the presumption of detention that applies here—and he cannot—the Court must consider the "nature and circumstances of the offense, including whether the offense is a crime of violence . . . or involves a . . . firearm." 18 U.S.C. § 3142(g)(1). Here, the nature of the original offense conduct weighs heavily in favor of detention. The defendants are charged with conspiring to distribute large quantities of fentanyl, acetyl fentanyl, cocaine, and heroin throughout a residential neighborhood in the Bronx, including, at times, from the defendants' homes. Consistent with that objective, law enforcement recovered drug, drug paraphernalia, scales, and a firearm from several of the defendants' homes following their arrests.[1]

---

[1] The Government understands that Ahmed occasionally resides with his girlfriend, and also resides at times with his mother, who is also a co-defendant in this matter. Ahmed was arrested at

Page 3

The defendant's participation in a drug trafficking conspiracy whose primary object was the acquisition and sale of fentanyl and acetyl fentanyl unquestionably demonstrates utter disregard for the lives of those in his community, who continue to be endangered by the extremely dangerous (and lethal) narcotics possessed and distributed by the defendant.  The danger the defendant (and his co-defendants) pose to the community is further enhanced by their reliance on firearms as part of that drug trafficking activity.  It is for this reason that courts in this district "regularly find that the distribution of [narcotics] poses a significant danger to the community," particularly where, as here, the defendants appear to have also relied on guns during their drug dealing.  *United States v. Arau*, No. 21 Cr. 570 (MKV), 2022 WL 409318, at *2 (S.D.N.Y. Feb. 9, 2022) (collecting cases).  This statutory factor alone weighs heavily in favor of detention.

Second, the evidence against the defendant with respect to the narcotics conspiracy and firearms charge, for which he already faces a total mandatory minimum of fifteen years, is unquestionably strong.  *See* 18 U.S.C. § 3412(g)(2).  The evidence against the defendants include a series of recorded controlled purchases, law enforcement surveillance, reports prepared after each of the controlled purchases, and laboratory reports.  That evidence is only compounded by additional electronic evidence of the defendant's participation in the subject offenses obtained from the defendants' cellphones, as well as additional narcotics, scales, drug paraphernalia, weapons, and ammunition that were recovered from the homes of several of the defendant's co-conspirators, including, as relevant to Ahmed, his mother's home, where the Government understands his occasionally resided, and where an empty gun holster and additional narcotics were recovered next to some of the defendant's possessions, including an identification card belonging to the defendant.  This factor undoubtedly weighs in favor of detention.

Third, the history and characteristics of the defendant further establish his dangerousness and his disregard for the law and for the safety of others.   The Second Circuit has recognized that it is not necessary for the Government to "present a record of violence or dangerous conduct in order to justify detaining a defendant on grounds of dangerousness."  *Rodriguez*, 950 F.2d at 89.  Here, however, there can be no doubt about the defendant's disregard for the law and the danger his release therefore poses to the community.  Earlier in October 2025, the NYPD arrested the defendant and his co-defendant, Elizabeth Peralta, in connection with an undercover drug "buy and bust" where law enforcement recovered ecstasy, cocaine, crack cocaine, and other narcotics from both defendants after they sold narcotics to an undercover officer.  (*See* Ex. A.)[2]  When law enforcement searched both Ahmed and Peralta, they found additional drugs and cash from the sale that both defendants had just conducted in tandem.  The defendant was released and his arrest was ultimately sealed, but as these charges demonstrate, Ahmed appears to have resumed the conduct he was arrested and charged with in October without interruption, despite his arrest.  That decision

his girlfriend's residence, which law enforcement did not search following his arrest.  However, law enforcement recovered both narcotics and an empty gun holster from Doyle's apartment, some of which were stored next to possessions that appear to belong to the defendant, including a copy of an identification card belonging to Ahmed.

[2] Because the underlying arrest that formed the basis of this seizure remains sealed, the Government respectfully requests that the Court accept Exhibit A under seal.

Page 4

can leave no doubt about the danger the defendant poses to the community, or the likelihood Ahmed will reoffend if released back into the community.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community" that the defendant's release would pose. 18 U.S.C. § 3142(g)(4). Even assuming that the defendant's current bail conditions were sufficient to reasonably assure his appearance at future court proceedings, they are not sufficient to assure the safety of the community. The defendant is charged with participating in a year-and-a-half long narcotics trafficking conspiracy involving large quantities of fentanyl, acetyl fentanyl, cocaine, and heroin. That conspiracy relied on guns in order to achieve its aims. This type of conduct fits squarely within the scope of serious danger to any person or to the community. Releasing the defendant on *any* conditions would clearly be inadequate. Instead, "the protection of the community would be left largely to the word of [the defendant] that he will obey the conditions," *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993). Taken in combination with the defendant's underlying offense conduct, there is little reason to believe that home confinement or a bond will protect the public from the defendant.

Neither the proposed conditions of release nor the arguments offered by the defendant to date rebut or negate the danger the defendant poses to the community. At both his presentment and his bail hearing, and his current submission, the defendant primarily argued that his ties to his family, his lack of prior criminal history, and the proposed bail package are sufficient to demonstrate that he is not a flight risk or a danger to the community. But in a presumption case, the presumption for pre-trial detention may be rebutted by the defendant "'coming forward with *evidence* that he does not pose a danger to the community,' not merely more stringent conditions." *Arau*, No. 21 Cr. 00570 (MKV), 2022 WL 409318, at *4 (S.D.N.Y. Feb. 9, 2022) (quoting *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) (emphasis added). Indeed, as Judge Vyskocil concluded in rejecting a similar bail package in *Arau*, "[e]ven if [the defendant] were placed on home confinement, he could use a phone to coordinate drug transactions, arrange for the sale or transfer of firearms, take possession of narcotics and firearms from or for other gang members, or otherwise communicate with fellow gang members. . . . [I]t is impossible for pretrial services to adequately monitor all of the ways [the defendant] could continue to commit crimes while on home confinement." *Id.* at *4.

Page 5

## III.  Conclusion

For these reasons, as well as the arguments made by the Government during the defendant's March 17, 2026 detention hearing, the Government respectfully requests that the Court order Ahmed detained.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  _____
Georgia V. Kostopoulos
Assistant United States Attorney
Southern District of New York
Tel. 212-637-2212

cc:  All counsel of record (via ECF)

Encl.